You may proceed. This is a case about three issues I would like to talk about today. First is whether or not the Hague Convention applies to notice for bankruptcy filing when it's transmitted to a foreign party, such as our client, Jinil Steel, who's located in South Korea. Number two, I would like to talk about the Woosung Hitech case, which is a related case. Virtually, Woosung Hitech's claim is identical to Jinil Steel's claim. Woosung Hitech was the middle person in the transaction. Jinil sold to Woosung, and Woosung sold to Valuepart, and the claims are identical, and Woosung was able to file their claim timely. And whether or not, due to that fact, Jinil Steel's claim should be admitted or allowed under the informal claims rule. Number three, whether or not allowing Jinil Steel's claim causes prejudice to the debtor, as well as the other unsecured creditors. But the primary, the district, the bankruptcy court, because we're the second court of review, this bankruptcy court heard, had a hearing, and the brief submitted to it said excusable neglect should apply because we couldn't understand an English notice to us. Yes. And so, and that's what the bankruptcy court decided, and then the district court affirmed. So. Well, not only that. But as to that issue, what would be your best case that we, second court of review, would reverse that very discretionary fact-specific conclusion that, in fact, the email showed English was understood adequately? In the bankruptcy court, Jinil Steel, we argued about the claim of the hate convention. We argued that. So you aren't, you aren't asking us to perceive error in the conclusion that the district, the bankruptcy court made. Your argument is not as to the issue it didn't address at all. Yes. They didn't address it at all. Even the district court didn't address it. The bankruptcy court, for some reason, they didn't address it at all. Well, for some reason, it's probably because the hate convention, if I'm not mistaken, wasn't brought up in the briefs. So. Well, it was brought up in the hearing. Right. And it was also brought up in the district court brief as well. It was brought up. No, I know. But to the bankruptcy court, it just came up, the comment by the attorney was, maybe it was you. Yes. You said, generally, here's how we get these documents. They're translated for us. They come through the central authority. Yes. But no case law was cited as to the applicability of the hate convention. And it wasn't in the briefs. So then the bankruptcy court doesn't address the issue. Maybe that's the fact. But we did argue that that was a requirement. I clearly stated that during the hearing to the bankruptcy court, but the court didn't address it. Right. I said that was a requirement. Okay. It's clearly stated in the past. Just, you know, this, you may have researched this, but what's your best case from our authority that you can preserve an argument with a remark in the hearing, but not in the briefs submitted to the court? In the hearing, we didn't cite a case. No, I know. But what's your case that something that's said, arguably, passingly, clearly so that the bankruptcy court didn't focus on it, when the bankruptcy court made its ruling, did you object and say you forgot the hate convention argument? We didn't make that objection, but we did raise it in the district court because bankruptcy court did not address it in their order. We believe that they should have addressed it. Yeah. Okay. Go ahead and make the argument. Yeah. There's an important issue there. So, the best case that said the hate convention would apply to a notice for a proof of claim is what? Yes. The two cases, I would like to state the actual official title of the hate convention. It's called the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, and it's unofficially called the hate convention or sometimes referred to as a service convention. And it was concluded in 1965, U.S., our country signed it and signed into law in 1967. South Korea did so in 2002, with the exception of the central authority. And two cases, the Supreme Court cases, first is the Volkswagen case versus Shillong, decided in 1988. And the second case is the water splash versus Mellon. And both cases did not involve any bankruptcy proceeding, it was about some other issues. However, because the Volkswagen case was a landmark case, Justice O'Connor laid out a very clear and precise definition of what covers and what doesn't cover of a hate convention. And according to both cases, it doesn't exclude any bankruptcy notices. And it only mentions about a document when it's transmitted or served to a foreign party, the hate convention applies. In this case, Juneau Steel was a foreign party, and it was a party to a judicial proceeding. And according to the hate convention, it should apply. This is a value part argument. Value part basically says it doesn't apply because bankruptcy notices are excluded. Like I said, it doesn't, nowhere in the hate convention or in the Volkswagen or the water splash case mentions that bankruptcy court cases are excluded. And number two, value part says it doesn't apply because bankruptcy, Chapter 11 bankruptcy notices do not culminate in service. Well, if you look at the document, there is a certificate of service, which states that at the back of the notice for Chapter 11 bankruptcy plan, it says, I, LCT Bowers, depose and say that the proposed claims and noticing agent in the above reference matter on November 4th, 2016, the following documents have been served. It's a certificate of service. So obviously the notice has been served to Juneau Steel, but it was defective. Is your complaint about under the hate convention that the document that was served was in a way misunderstood by the recipient? Is that the only objection you have to the service and that you think the hate convention applies? No, that's not correct. That plus it should have been sent over to the central authority of South Korea. South Korea clearly objected to that option and requirement. And now prior to the time that you received the, sir, your client received the service, is there, help me out with this timeline. There's a communication, an email communication. Can I get some water? Certainly. I'll continue to ask my question while you do that. There's an exchange of emails inquiring about, well, they say what they say, inquiring about responding and so on and so forth. Is that prior to the time that you received, your client receives the notice? No, that was after receiving the notice. And the Korean client, they don't do international business. They only sell domestically. And in this case, they sold to another Korean vendor called Woo Sung. And they receive it, they're like. But they're relying, in this case, in addition to that, aren't they relying on some type of guarantee that they receive from the debtor directly? Did I understand the question correctly? Yes. What happened was that ValuePart was already indebted to Janil at the time the guarantee was executed by both parties, all three parties actually. And this was back in 2016, right before they filed for bankruptcy. Directly to Janil? Yes, directly to Janil, right before filing for bankruptcy. And the group chairman, Mr. Passini, all the way from Italy, flies over to South Korea to meet Janil because Janil said, we're not going to give you any more products unless you keep up to date with the accounts. And it was a big deal because they really highly depended on Janil. So he flies all the way from Italy to South Korea and meets with Janil as well as Woo Sung and says, they're begging, please extend us more credit. And they had a great dinner and everything's OK. And ValuePart group chairman provided a guarantee and Janil was, OK, all right, I'll give you one more chance. And they extended another credit of hundreds of thousands of dollars. And six months later, what does ValuePart do? They file for bankruptcy. And not only that, they're trying to deny our claim. I think that's very, very unethical and it's bad faith. And we're, you know, slapped in the face because of that. I remember the record, I think, that you had counsel, but it was Italian counsel, correct? The record reflects that you had, before the deadline expires, you are communicating with counsel about the fact that ValuePart is not paying you. Well, at the time, Janil still did not have counsel at all, not even Italian counsel. Through the deadline. So they didn't. They had no counsel, zero counsel. All right. Yeah. And, you know, ultimately they filed late. But another twist to the story is that Woosung is owned 50% by who? By ValuePart. So they knew exactly what was going on. And after Woosung filed their claim and they realized that Janil filed late, they objected to, not only to our claim, but as well as their own claim, Woosung High Tech's claim, so that we won't somehow hinge onto Woosung's claim and get in the door. So I thought that was also very, very bad faith. So basically it went from, as I told you earlier, it went from Janil still to Woosung. You're using the term bad faith, but isn't the appeal that you're taking here, putting aside the compliance with the Hague Convention, isn't the appeal about excusable neglect, though, and that there should be some forgiveness in terms of the length of time to file the proof of claim? Isn't that the argument? I mean, the argument isn't rooted in bad faith of the debtor. It's rooted in whether or not there's an excusable neglect by your client. Yes. I think this is clearly excusable, I believe. There was some neglect for filing late, but it's clearly excusable. Not only that, I believe the Hague Convention requires the surface of process of the notice of Chapter 11 bankruptcy should have been done properly. What's your best, I mean, pioneer is the Supreme Court case governing excusable debt. What's your best authority where a circuit court reverses a district or bankruptcy court's decision not finding excusable neglect? Well, I don't think pioneer goes against. No, it doesn't go against. I'm just asking you for, it seems what my first question to you was, this is a highly fact-specific determination. I didn't, on my own, find many cases where reviewing courts reverse a court that has you know, you were sufficiently informed. Your arguments about not reading English aren't excusable. What's the case that says, no, we've looked at it and we're going to reverse that? Well, if the focus is on that, we haven't submitted any, I don't think, any cases. You don't have them? Maybe we don't have them. So the argument, again, comes back to the Hague Convention. I believe so. I believe so. I believe, I think the Hague Convention is the controlling authority. Do you have any quick response to the Third Circuit case they cite, the G-2A case, that tries, it seems to me, does draw the distinction for Hague's service between notice obligations and service as to proceedings? Yeah, I just see that Third Circuit case, it's not, it's not compulsory authority. I believe it's, it might be, it might be. Is the reasoning incorrect, would you say? I think the reasoning is incorrect. I don't think it necessarily excludes bankruptcy notices. If it does, I think it's wrong. I think the Supreme Court has already said any document that is transmitted, it doesn't say, the Hague Convention is not summons and complaints. It would seem to me that bankruptcies would often include foreign creditors. Yes. And yet, we don't see a single case, district or circuit, anywhere in the country saying the Hague Convention service requirements to a central authority in translation apply, do we? We don't. And this is a very first case when it comes to the bankruptcy. That would be a very significant expansion of obligations. Ms. Bowers, as you point out, the service agent instead would have to send it to a central authority, have it translated, if in fact what's going on here at this Chapter 11 notice stage is just the debtor's got to tell anyone who might have an interest, hey, be aware this is occurring. You may want to file a proof of claim. That sounds very different than serving someone who is a part adversary party in a case. Well, in my opinion, the reason why there haven't been any cases, because most creditors are very interested in their claim, and they want their claim to be included. Yes. And there are no cases where they have actually sat back and filed late, because most creditors file on time. And that's why this case hasn't been litigated. But we didn't. And that's why we were here today. But isn't the real reason you didn't file within the time frame because your general manager was on extended leave, and nothing was being attended to with respect to while he was there? The general manager actually left the company. He was not on leave. He left the company. And he was the only reason why we didn't file on time, because general manager was the only person who could speak English. And if you put... He's not the one that sent those emails. No. He wasn't. He didn't. It was a son of the chairman who happens to be studying in Texas. I know. But this may be partly what the bankruptcy court was troubled by, because you said he's the only one who spoke English. But as Judge Clement points out, there was someone who's speaking English that's replying in the emails in the record. But he also had no clue of the communication or the legal process of what to do with the document as well. Right. Yeah. And that's... And he was not... Yeah. So they got it. They got notice. They just had no clue. They had no clue. They had no... On the law. I'm not sure translating through the central authority would advise them on the law. That may just be they didn't get a lawyer. Well, at least if they got it in Korean language, they would have looked at it, they would have understood the legal ramifications of it. And that goes to the heart of the hate convention. And hate convention requires two things. Translation... You do have time reserved for rebuttal. That's just the way it works. So you'll get to hear them and then get back up. Wonderful. Thank you. Thanks. Good morning, Your Honors. Tom Scannell for Appley, the Valley Park Incorporated Company. May it please the Court. One thing that was stated during Appellant's presentation that I think needs to be corrected, I don't think it's entirely accurate, was Judge Englehart's question about the nature of Valley Park's debt to Janille or how Valley Park may have been indebted to Janille. I don't believe there's any evidence in the record that Valley Park was ever directly indebted to Janille. I believe the testimony bears that out as well. At trial, Janille's representative testified that they never did business outside of Korea. The evidence in the record, as far as I understand it, and I've reviewed it thoroughly, I believe the only nature in which Valley Park ever would have been indebted to Janille was through this guarantee, which expired before Valley Park even filed bankruptcy. You were the attorney at the hearing, correct? Yes, Your Honor, I was. When I read the transcript, it didn't look like you were startled by hate convention argument, and this is a compliment to you. It's three pages of transcript, he brings it up, and you say that's a non-starter. You don't object and say, hey, he hasn't brought this up, I don't know where he's going with this. So, I guess this is to the preservation issue. It looked like you were ready and you were pretty confident that it was addressed. You said no, therefore do you accept that we would be reaching the merits? The merits of the Hague issue? Yeah, as the basis for excusable neglect. I don't believe it was properly raised before the court. I went ahead and responded to it because I didn't want an issue to be raised and not have anything to say about it, so I did respond to it. I trusted my instincts on, I mean, I'm a Chapter 11 bankruptcy attorney, I've been doing this for 11 years. I understand how notices are served versus adversary proceedings or contested matters. The nature of, essentially, what the Boykin case and the Volleyball case raised, the distinction between matters that directly arise out of litigation between two parties versus general notice procedures. My instincts told me this is not the kind of notice that, I'm not experienced in the Hague, but my general understanding of the Hague was that this is for lawsuits. These are for things that directly impact a foreign party. The court is going to need to take in personam jurisdiction over this party. A simple notice isn't going to cut it for this kind of— So those are your instincts, and I love it when I have people with specialized knowledge, but now you've had a chance to research it. Are you even, are you doubling down on your confidence? Because I think we would be the first circuit that would draw that line, which could be very consequential globally for small debtors. You don't dispute they're a small Korean firm that's primarily going through someone else to sell in the U.S. So it seems to me, linguistically and legally, they really might not know how our Chapter 11 rules work. I can't speak to their sophistication on the Chapter 11 process. But have you researched it, and can you tell me, here's a case that pretty much gets you there. This is different. This is notice, and this is service. This is governed. This isn't. Yes, Your Honor. Again, I believe Boykin and Volleyball draw a very good distinction. Both of those are cited in our brief. Between the bankruptcy notice process, which is generally administrative, it affects all creditors generally, not any creditors specifically. But couldn't your argument regarding the difference between service and notice, couldn't that help with the appellant's argument regarding excusable neglect? In other words, if it's service of legal papers, then an answer is required, and the penalty for not answering, of course, is you run the risk of having a default judgment taken against you, whereas a notice that's provided, and it's not in compliance with the Hague Convention, the penalty for not responding to that would be, well, I now understand that which should have been translated, so that would play into the excuse, for lack of a better term, of excusable neglect. In other words, the ramification is different for service and notice, and that's the argument that you're making. But the corrective measure is not a default judgment. It's rather excusable neglect, such that he could file a late claim. That is correct, Your Honor. And that's why I think ultimately, whether it's waived or not, the Hague can be baked into the excusable neglect analysis, and I think that's exactly what the Bankruptcy Court did here. The Bankruptcy Court, whether it directly addresses or names the Hague in its opinion or not, it clearly considered everything that was raised at trial and made a careful analysis of each of the factors under the pioneer analysis. That's why I think even if the Hague wasn't directly named or mentioned, it was considered and baked into the pioneer analysis. But excusable neglect is just, are there factors beyond the reasonable control, correct, of the creditor? The reasonable control factor is one of the four pioneer factors for excusable neglect, Your Honor. Here, I mean, it is Korean organizations, clear even from the e-mails, they're very broken in their ability to communicate in English. And then we find out that the person that's responsible had left the firm. You heard his assertion today, they didn't have an attorney. I thought that they had an Italian attorney. They didn't. It's a little startling that a Bankruptcy Court wouldn't say, you know, that's okay. Those are enough. That's excusable. We'll hear. No? Do you have authority on Bankruptcy Courts? You're good to be listening to me, so I should turn it into a question. What's your best case of a Bankruptcy Court saying no excusable neglect in similar circumstances? Linguistic and legal problems, foreign country, creditor. Also, two answers on the linguistics problems, I would say, or the linguistic problem. I would say the best case on this point is Advance Watch. Doesn't speak directly to the excusable neglect analysis, but it does speak directly to bankruptcy notice not having to go through the Hague. The best case for facts that I think are almost on all fours, the only fact that's not included here is the language issue, but it's the Fairchild opinion from Judge Leif Clark in the Western That case is on all fours factually for an alleged technical service default, but the court says no matter how serendipitous the actual notice is achieved, it accomplishes not only due process, but it substantively and dispositively rebuts excusable neglect. I think the Fairchild opinion is on all fours in this case. The only thing it doesn't have is the language wrinkle. But again, we have to defer to the bankruptcy court's findings on the language issue. The language issue was raised, it was what the appellant relied on most at the trial court level was the language barrier. We have to defer to the bankruptcy court's assessment of that issue and its findings on that issue, which ultimately found, it ultimately rejected the language barrier issue and found that excusable neglect was not proved and that ultimately despite the language barrier, the emails and also Bower's testimony about the telephone conversations that she had in English was not only the emails, it was also telephone calls that Bower's testified to that I believe are the solid evidence in the record that supports the court's findings that the ability to file a claim timely was certainly within the reasonable control of the appellant here. That's helpful. Would you have a thought on what I thought was Italian counsel? I believe, and again I'd have to go back and look at the transcript, but I thought their representative testified that they did have counsel because they were pursuing the debt against Wusong and they were also negotiating the collection of the debt in Italy. So they didn't have an American attorney trying to collect the debt in the States. I believe they did have counsel for the specific purpose of collecting this debt before Value Part filed bankruptcy. I recall that being the testimony, but I think that would be worth looking at again. As to the applicability of the Hague, I think it's important to draw a distinction between what the Hague technically applies to or covers versus its mandatory and permissive provisions. Water Splash says that it applies to any documents that need to be served abroad, but does not apply to any documents that do not culminate in service. So the question becomes, is service a term of art? Does service cover only service of process, meaning the complaint and summons? Or does service cover other types of documents that are outside the scope of the complaint and the summons? Based on the case law I've read and the research that we've done, I do believe the Hague applies or covers documents other than the summons and complaint. The question is, what documents are mandatory? What documents are permissive? If you look at the text of the Hague itself, there are two chapters that are distinguished here. There's chapter one for judicial documents, and the language used in chapter one covers articles two through sixteen. The word used is shall. There are no mandatory words used, there's no mandatory, I'm sorry, there's only mandatory text used in chapter one, articles two through sixteen. Then you get to chapter two, article seventeen. Chapter two has only one article in it, that's article seventeen, the title of that is extra judicial documents. The word used in article seventeen is may, it's permissive. The text of the Hague itself draws a distinction between judicial documents that must be served through the Hague, those are mandatory, versus extra judicial documents that are permissive. They're not required to, but they can be served through the Hague if that would be the best way to serve a foreign party with the particular extra judicial document in question. Now the question then becomes, well what kinds of documents are judicial documents and what kinds of documents are extra judicial documents? We could not find any cases that define what a judicial document is versus what an extra judicial document is. So we had to refer to, and the text of the Hague itself also doesn't tell us exactly what they are. It just says judicial documents have to be served through the Hague, extra judicial documents may be served through the Hague. So we wanted to take a look at some guidance here and see what authority was out there to help guide this analysis. The practical handbook on the operations of the service convention defines judicial documents as instruments of contentious or non-contentious jurisdiction or instruments of enforcement. These include writs of summons, defendants' replies, decisions, judgments delivered by members of a judicial authority, as well as a witness summons and requests for evidence. Conversely, the handbook defines extra judicial documents as differing from judicial documents in that they are not directly related to a trial, but they're also not strictly private documents, such as a will or a contract. Rather an extra judicial document are this mass pile of documents in the middle. They require the involvement of a judicial officer or authority, such as a bankruptcy court. They also include, and this is specifically mentioned by the handbook, notices served by creditors upon debtors. So although it's the inverse here, we're still talking about notices between obligated parties on the nature of debts. And I think that's exactly what a bankruptcy case notice, or a notice of claims bar date is in this case. It's an extra judicial notice. And again, I feel like a broken record, I keep going back to Boykin and Volleyball, but those two cases help illustrate this point exactly. Does that Third Circuit case I was mentioning delve into this extra judicial document distinction helpfully at all? No. So Boykin and Volleyball don't mention that. And the Third Circuit, the G2A case, I thought you cited it. You heard me asking him about it. It doesn't matter. I'm not certain. That's all right. Go ahead. Yeah, I'm not certain that we cited G2A. And I'm unfamiliar with G2A, or maybe the name is off a little bit, but Boykin— When the IRS sends notice. No. Keep going. I'm sorry. I'm sorry, Judge. I'm unfamiliar with that case. You were talking about this handbook. Yes. And the distinction between judicial and non-judicial documents, or extra judicial documents. We actually have two—Schlunk and Watersplash were two Supreme Court cases that addressed the scope of the Hague. And we wanted to be sure that we covered all the cases that the high court discussed, the scope of the Hague and what it applied to and what it didn't apply to. Unfortunately, neither of those cases applied to an extra judicial document. Both of those cases were in the context of a complaint and a summons. So we want to take a look at what the lower courts have discussed on specifically this issue in the context of bankruptcy notices. And in 2018, this case is cited in our brief. It's the advanced watch case, specifically applying the holdings of Schlunk and Watersplash. The Southern District of New York states that the Hague Convention only applies to service of process on foreign defendants and thus excludes judicial documents other than the summons and complaint. The court held that documents under Rule 5, as opposed to the summons and complaint under Rule 4, may be served outside the scope of the Hague Convention. And what I really like about the advanced watch case is that's in the context of—there were two sets of documents that were served. That's a preference complaint case, so that's an adversary proceeding. The plaintiff's counsel served the summons and complaint on the preference action against the foreign defendant through the Hague. They got a default judgment. And all of the other documents, the notice of default, the notice of hearing on the default, everything outside the summons and complaint were served via first-class mail on the foreign defendant. And the bankruptcy court goes through the analysis of why service was proper under the Hague for the summons and complaint and why it was also proper to not have to go back through the Hague for anything other than the summons and the complaint. All of the Rule 5 documents, we'll call them, were served via first-class mail just as the notice in this case was served in accordance with Rule 2002 P2. And the court says that was perfectly fine. The scope of the Hague did not apply to the documents governed by the 2002 rules as opposed to the 7,000 rules in the bankruptcy. And in the Bankruptcy Code, under those different chapters or sections, the 7,000 or the 8,000 series explicitly incorporates the Hague by reference or not? Yes, it does, Your Honor. Rule 7,004 incorporates Rule 4 of the federal rules. And Rule 4 itself says the Hague should be used when serving foreign defendants. But 2002, applicable here, has no reference? No, it does not, Your Honor. I think it's important to touch lastly on ultimately the impact of where all of this discussion about the Hague fits in. Because it's pretty, we can get in the weeds pretty fast on does it apply, does it not apply. Ultimately, even if the court found that it did apply, we would then have to take two more steps for it ultimately to matter. We would have to find that the, basically ignore the actual notice that the appellant received, ignore all of the court's findings, and really overturn the court's factual findings based on the record as far as the awareness that appellant had, the 60 days opportunity that they had to file the claim, and find that based on a pure alleged service technicality, that that somehow resulted, that caused the appellant to no longer have the reasonable control to timely file a claim. And even if we got to that step, we would then still have to weigh that reasonable control factor against all of the other pioneer factors, none of which went to the appellant at the trial court level. The bankruptcy court made specific findings on the prejudice to the debtor, the prejudice to the other creditors, the length of time, and the delay, or the delay that that length of time would cause on the judicial proceedings. Ultimately, we get to the same place, and Judge Clement hit on a very good point, that there's no evidence in the record that had this translated document been served through the Hague, that the result would be any different. The testimony showed that there was one person at the company who was qualified to deal with the value part debt. The court made specific findings that that person was gone from October of 16 through February of 18. There's no evidence in the record that any action would have been taken had we followed the Hague, and had we followed everything the appellant wanted us to do, we would end up in no other place than where we are right now. I think that's a really important point to make because to remand or reverse under the record of this case would serve no purpose, would still be here. And ultimately, at the end of the day, this is, you're right Judge Higginson, this is about control. The most important factor under the pioneer analysis is who had the reasonable control to file the claim or not. Under the facts of this case, and under the record supporting the Bankruptcy Court's findings, those findings cannot be overturned unless there's clear error. The circuit speaks to the standard of clear error. The standard plainly does not entitle a reviewing court to reverse the findings of the trier fact simply because it is convinced it would have decided the case differently. If the evidence is plausible in light of viewing the record in its entirety, the reviewing court may not reverse even though it is convinced, had it been sitting as the trier fact, it would have weighed the evidence differently. When there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. That's a matter of Webb, 5th Circuit, 1992, 954, Fed 2nd, 1102 at page 1104. That concludes my presentation. I would be happy to answer any questions your honors have. Thank you, counsel. Thank you, your honors. Kim? Your honor, at first 5th value part in the lower court says hate convention doesn't apply at all. And they change the position. Now they say hate convention applies, but if you read their brief, only applies to summons and complaints. Now you heard them say it applies to summons and complaints plus some other documents they don't know about. So clearly they have changed their position three times. But the reason why is because hate convention applies to any judicial document in a judicial proceeding that needs to be served to a foreign party. That could be a defendant, that could be a summons and complaints, that could be a notice for chapter 11 bankruptcy filing. It works as a complaint to be served in an adversary proceeding because JNL loses their rights to their claim if they don't apply in time and properly. And this is a case right now that needs to be decided and it would have a detrimental effect on all creditors overseas. Number two, on the Italian counsel, the reason why I think value part is confused that they had an Italian counsel at the time is because value part was a global group of companies. They had presence in Italy, Germany, U.S. obviously, and they filed bankruptcy in all three places. And after they filed bankruptcy, JNL claimed, hired an Italian counsel to pursue the claim. They didn't do it before, they did it after value part filed for bankruptcy. But before their deadline to notice, did they have counsel at the time these communications were going on? No, they didn't. And this happened after the fact, yes. And regarding the difficulty of translating the bankruptcy notice as well as a proof of claim, it took me about an hour and a half to translate. It's not that difficult. It's not very lengthy either. And sending it over to the central authority compared to sending it directly to JNL, that's just a matter of, you know, sending it. It's not that difficult either. And it took me five minutes doing the internet search to find the South Korean central authority. Just type in South Korean central authority for hate convention. Voila, it's right there. All the address, telephone numbers, website, everything's there. So it wasn't very difficult. But, you know, value part mentioned in the lower court that they did everything that they could, you know, your honor, you know, what can they do now? Well, they didn't do everything that they could. They didn't follow the rules of the hate convention. And it's not that, it wasn't very difficult for them to do so. Thank you, counsel. Your case is submitted.